189 P.2d 632

**WILLIAMS v. HAAS.**

No. 5030.

Supreme Court of New Mexico.

Jan. 30, 1948.

Rehearing Denied Feb. 27, 1948.

W. C. Whatley and T. K. Campbell, both of Las Cruces, for appellant.

Mechem & Mechem, of Las Cruces, for appellee.

SADLER, Justice.

The plaintiff below appeals from a judgment dismissing his complaint following an instructed verdict against him given by the court on defendant's motion at the close of plaintiff's case. Damages for personal injuries suffered in an automobile collision between a car driven by plaintiff and a truck driven by defendant were sought in the complaint filed.

The defendant's motion for directed verdict stated two grounds, namely, (1) that plaintiff was guilty of contributory negligence as a matter of law and (2) that no negligence on defendant's part was shown. The trial judge sustained the motion without stating upon which ground he based his action, nor was he requested by the plaintiff so to do. Nevertheless, in this court, the plaintiff assigns and argues the single claim of error that the trial court erred in holding plaintiff guilty of contributory negligence as a matter of law. Since the defendant seems willing to meet him on this issue, although calling our attention to the state of the record mentioned, we first consider the question thus presented to ascertain whether it settles the case. If it does, our inquiry ceases.

On March 5, 1945, the plaintiff, driving a Chevrolet coupe, was traveling south on a county road in Dona Ana County about four miles south of the village of Chamberino. As he neared the scene of the collision, he came to another county road running east and west and intersecting the north-south road at a right angle in such fashion as to form a T but without bisecting or extending through the east-west road. Without coming to a stop, he approached the intersection with his car in intermediate gear, traveling at a speed between 10 and 12 miles per hour. He did not proceed to center of the intersection on the right of the north-south road

before turning to the left and east, there being some small mud holes from a recent rain in the intersection on south side of the east-west road. Accordingly, he cut the extreme northeast corner of the intersection of the east-west and north-south roads. He had traveled only 35 feet easterly on the north side of the east-west road when his coupe was struck in the rear, to the right of center, by the defendant's truck traveling east. The plaintiff's car from the force of the impact and its own momentum was propelled some 25 feet in the direction it was going, partially reversed its position, overturned and resulted in the injuries he complains of. When struck, the plaintiff's car was wholly on the north side of the east-west road and had negotiated about 35 feet thereof before being struck.

One approaching the intersection from the direction plaintiff did, in endeavoring to see traffic to the right would have to look through two different sections of a lattice fence some 5 or 6 feet high on west side of north-south road and north side of the east-west road enclosing the yard of what is designated as the Skevington house and coming down to within 12 or 13 feet of the center of the east-west road and within 4 to 5 feet of the north edge of said road. There was also a Chinese Elm tree at the intersection to the right as well as a telephone pole. However, the lattices were separated by sufficient distances to enable

one to see through them and at the time of year in question there was no foliage on the tree and neither it nor the telephone pole obscured a view to the right upon entering the intersection from the north. The plaintiff looked both to the left and right on approaching the intersection and seeing no traffic entered the same as aforesaid. The plaintiff's coupe partially reversed its position and turned over pinning the plaintiff's right hand between the body and right door of the car, necessitating amputation of the little finger of his right hand, causing considerable shock and much pain and suffering.

The plaintiff testified regarding conditions existing at the northwest corner of the intersection, as follows:

"A. On the north side of the east and west road there is a picket fence.

"Q. Indicate on that plat how that fence comes down from his house and where it goes to there? A. (Done).

"Q. Was there any vegetation there at that time? A. No, sir.

"Q. Was it possible to see between those palings in that paling fence? A. I think so.

"Q. Could you do it? A. I could do it.

"Q. Can you describe that paling fence a little more in detail so we can understand what it is? A. Well, it is a slat fence, tied together with wire—just regular, I suppose you call it chicken fence—it's board slats.

"Q. What are the width of those board slats? A. About an inch and half.

"Q. What is the distance between those slats? A. I think about the same, about an inch and half.

"Q. How high is that fence? A. As far as I can remember, I think there were about thirty inch slats, two of them, one on top of the other, more or less.

"Q. About five feet high? A. Five or six feet high."

Again, when cross-examined touching same, he testified:

"Q. This lattice fence, you say, is a wire fence with board stuck down? A. That's right, regular woven, wooden fence.

"Q. You say it has two tiers? A. Two tiers, yes.

"Q. About how high would you say they are? A. I would say they are thirty inches, more or less.

"Q. Does that go clear around here? A. Goes clear around the front.

"Q. So that in coming down the Sommerville road, in order to see if any car was approaching on your right along what you would call the east and west road, you would have to look through two fences? A. Yes, you would have to look through two. You

see, the corner of that fence is just sixty-one feet, I measured it, on the lattice fence on the east side of that fence to the corner of the Sommerville road is sixty-one feet.

"Q. And comes down to how close to this. A. Sixty-one feet from there to the center of that other road."

As to manner of entering the east-west road and the time elapsing after entering same before being struck, the plaintiff stated:

"Q. Go ahead and tell what you did and how you entered that east and west road and what position on that road your vehicle occupied as you entered and after you started toward the east? A. I turned the corner to my left, my car was in intermediate, there was a little mud on each side, I drove to that intersection, which wasn't very far, in intermediate, I slowed up there, looked right and left and never saw any object, I turned the corner and just in a second, or moment or so, I felt something hit me on the rear."

Whether the plaintiff has been guilty of contributory negligence barring a recovery is nearly always a question for the jury under proper instructions by the court. It is rarely the case the facts are such that the court can say as a matter of law that plaintiff is himself such an offender against the rules of the road as to deny him recovery. Yet, on occasions it does thus appear and when it does, the court should not and

will not hesitate so to declare. Gray v. Esslinger, 46 N.M. 421, 130 P.2d 24, and cases cited. We think this is not such a case, even though strongly relied upon by counsel for defendant in support of the motion to dismiss. The defendant's motion reads as follows:

"Judge Mechem: Comes now the defendant, plaintiff announcing that he rests, and moves the Court to instruct the Jury to return a verdict for the defendant, for the reason that the evidence of the plaintiff shows that he was guilty of contributory negligence, in that he did not yield the right-of-way to the defendant, who was approaching the same intersection to his right, and did not keep a proper look out for any car approaching from his right; and also, that he gave no indication or signal that he intended to turn in any direction when he approached the intersection.

"Argument.

"Judge Mechem: I want to add one ground to my motion, that there is no evidence to show that the defendant was guilty of negligence."

There is nothing in the record, save as inferred from physical facts, as to the speed at which defendant was driving when his truck struck the rear of plaintiff's car. The complaint charged him with excessive speed, driving on the wrong side of the road and failure to keep a proper look out. That he was driving with his truck partially on

the wrong side of the road is positively testified to by the plaintiff. Negligence on defendant's part in this particular must be taken as established for purposes of going to the jury. Also, in the other two particulars charged it may be said sufficient appears in the testimony and exhibits to warrant the question of defendant's negligence to go to the jury. Hence it is that as to the question of defendant's fault, the plaintiff was entitled to go to the jury. However, since plaintiff's negligence is an integral factor in the doctrine of contributory negligence, we still must say whether it exists in a way that will debar plaintiff of recovery as a matter of law. We give a negative answer to this inquiry.

■ In order to bar recovery, there not only must be negligence on plaintiff's part but causal relationship as well between that negligence and the injuries complained of. Even though granted that he did not keep to the right of center of the intersection before turning to the left, to have done so would have put him in the direct path of the oncoming truck of defendant for a likely broadside impact. His failure to do what defendant charges was negligence, and so it is under the statute, 1941 Comp., § 68-501 (g), unquestionably saved him from greater harm.

■ If it is granted that the plaintiff was negligent in entering the intersection as he did without stopping or signaling as required by 1941 Comp., § 68-517, or in violation of the provisions of § 68-518, according right of way to vehicles on the right under certain conditions (although apparent that plaintiff's car had entered the intersection before defendant's truck did) still these facts do not resolve the decisive inquiry of causation. After all contributory negligence is not established until causal relationship between it and the injury is shown. This is where error appears in the trial court's action in directing a verdict against the plaintiff. He was entitled to have it say whether any violation shown by him of statutory regulations or the common law of due care was a proximately contributing factor in bringing about his injury. Olguin v. Thygesen, 47 N.M. 377, 143 P.2d 585; Langenegger v. McNally, 50 N.M. 96, 171 P.2d 316; Bunton v. Hull, 51 N.M. 5, 177 P.2d 168. See, also, Young v. City of Camden, 187 S.C. 414, 198 S.E. 45; Mathers v. Stephens, 22 Wash.2d 364, 156 P.2d 227; Branegan v. Town of Verona, 170 Wis. 137, 174 N.W. 468.

The trial court erred in directing a verdict for the defendant. Accordingly, the judgment rendered thereon will be reversed and the cause remanded with a direction to the district court to award the plaintiff a new trial. The plaintiff will have his costs in this court.

It is so ordered.

BRICE, C. J., and LUJAN, McGHEE, and COMPTON, JJ., concur.