364 P.2d 140

**Melvin R. CANTER, Plaintiff-Appellee,**

v.

**Kate G. LOWREY, Defendant-Appellant.**

No. 6790.

Supreme Court of New Mexico.

Aug. 16, 1961.

Atwood & Malone, Charles F. Malone, Roswell, for appellant.

Schauer & Stiff, Roswell, for appellee.

CARMODY, Justice.

Appellee Canter recovered judgment, following a jury trial, for injuries suffered in an automobile accident. Appellant Mrs. Lowrey seeks reversal on four grounds: (1) Improper questions relative to insurance on voir dire; (2) allowance of certain testimony by a physician, based on surmise; (3) improper argument to the jury; and (4) contributory negligence as a matter of law.

The accident occurred in Roswell. Mr. Canter was driving on the inside or center lane of two westbound lanes, when Mrs. Lowrey drove from a parking lot diagonally across the two eastbound lanes, and struck Mr. Canter's car on its left side with the right front bumper of her car. The accident did not occur at a street intersection, and neither party was exceeding the lawful rate of speed. The Canter car skidded twenty-one feet before and twelve feet after the impact.

The case came on for trial and, during the voir dire examination of the jury, Mr. Canter's attorney asked the question: "Do any of you have any interest in any insurance company?" Motion for mistrial was made and granted by the court when counsel for the plaintiff stated that he did not know that there was insurance in the case, but that he was morally certain there was. A few days later, in chambers, the court announced that the case would be reset before the same jury panel and that the insurance question could be asked in view of the fact that counsel knew of the existence of insurance, although not the name of the company nor the amount.

The case thereafter proceeded to trial, and the question was asked of three different groups of prospective jurors, in these words: "Do any of you own any interest or any stock in any insurance company?" Proper objections were made in each instance, and the court cautioned the jury that the question was allowed to be asked in order to permit counsel to intelligently exercise peremptory challenges, and that the question of insurance could not be considered for any other purpose as it was not an issue in the case.

The gist of Mrs. Lowrey's argument as to her first point is (1) that the question as originally asked was not in good faith, and thus the entire jury panel was disqualified; and (2) that the issue of insurance was a false issue, prejudicial to Mrs. Lowrey, particularly when plaintiff's attorney did not know the name of the company involved.

We see little merit to the assertion that the original lack of good faith carried over and affected the entire proceedings when the trial court became satisfied that counsel for the plaintiff knew of the existence of insurance. When it became known is of little consequence as long as the knowledge preceded the actual question at the

time of the selection of the jury. The court was fully apprised of the situation in three hearings in chambers and exercised his discretion in the determination of good faith and allowing the question to be asked. We cannot say that this discretion was unreasonably exercised. See Olguin v. Thygesen, 1943, 47 N.M. 377, 143 P.2d 585; Stalcup v. Ruzic, 1947, 51 N.M. 377, 185 P.2d 298; and Bass v. Dehner, 10 Cir., 1939, 103 F.2d 28.

As to the question which was asked, the problem is somewhat different because of the construction which Mrs. Lowrey seeks to place on the Olguin and Stalcup cases, supra. In Olguin a general question was asked of the jurors as to whether it would make any difference to them if it should develop that an insurance company was the real party in interest. Objection was made and a mistrial sought, but the court, although sustaining the objection, denied the mistrial and cautioned the jurors. This court, in effect, sustained the trial court on the basis that the verdict was not excessive and in view of the cautionary instruction. The opinion did say, however, that the question " * * * could, and should, have been more artfully put, * *." [47 N.M. 377, 143 P.2d 589.]

In Stalcup each member of the panel was asked if he or any member of his family owned stock or had any interest in two named insurance companies. We stated that this was a matter within the discretion of the trial court and that no abuse of discretion appeared.

Appellant urges that Stalcup overruled Olguin and that, even when asked in good faith, the question must include the name of the insurance company. We do not so construe the decision. It merely resolved the particular question in that case and did not state what the form of the question must be. In Olguin we said:

"It is neither wise nor desirable for a court to prescribe the specific form such interrogatories are to take or the manner of their presentation. This matter is one for the trial court to determine in the exercise of its sound discretion. The overwhelming weight of authority is that where parties act in good faith, considerable latitude should be allowed in the interrogation concerning the competency of prospective jurors to try the facts under investigation.

\* \* \* \* \* \*

"Judging from the more recent and better reasoned cases, it may be said that appellate courts more and more are inclined to leave with the trial court's discretion the determination of this question. Whether there has been an abuse of this privilege which litigants possess of ascertaining whether jurors would be unfairly influenced if

liability insurance were involved in the case, is left largely to such discretion, and when reasonably exercised, to remain undisturbed in these, as in other cases."

We also said in Olguin that calling the insurance carrier by name " * * * is not recognized as the best way to secure the information. * * *" The fact that it was done in Stalcup does not mean that we intended to suggest that this was the only or generally proper way to formulate the question.

We do not feel that the court abused its discretion and even if there were any question as to this, appellant must fail because the damages are not attacked as being disproportionate to that which the evidence necessarily justified and the question of liability is not really close. See Olguin v. Thygesen, supra.

We do wish to observe that the practice which has developed in many jurisdictions of advising the trial court, in the absence of the jury, of the questions proposed to be asked, the purpose thereof, and making of a showing of good faith, is definitely preferred to the method utilized by plaintiff initially. See annotation and cases cited therein, 4 A.L.R.2d 761, particularly IV, §§ 16, 17 and 18 at 792 et seq. Failure to follow such preferred practice has a tendency to negative a claim of good faith. Contrariwise, the following of such practice would minimize the possibility of any prejudice or injustice to either of the parties in many cases, as well as being a considerable saving of trial time.

Proceeding to the contention relative to the "surmise" testimony, it appears that the doctor testified by deposition as to Mr. Canter's injuries and the existence of a sprain of the upper dorsal spine. On cross-examination, the doctor was asked if he had found any affirmative evidence of disc damage. He answered that only ordinary x-rays were taken and that they do not show injury of this type, although plaintiff had pain radiating into his legs shortly after the accident, which could have been caused by hemorrhage or by disc injury. Then he added, "If a disc injury has occurred there, it is merely a surmise on my part because it cannot be detected in the films that we have."

Objection was made before the deposition was read to the jury, in the following words, in part: " * * * under our rules surmise is not good evidence." No motion to strike was made, and there is no attack made that the verdict was excessive or not supported by substantial evidence.

It is sufficient to dispose of this point that the objection as stated did not properly preserve appellant's present contention that a false issue was presented which affected the jury's verdict. It had already been proven that as a result of his injury Mr.

Canter had, for over two years, been suffering from a sprain of the dorsal vertebral joints of his spine and that he needed a surgical fusion which would result in some permanent disability. A reading of the doctor's testimony makes it apparent that the mention of the disc damage was a mere incidental possibility and did not enter into the doctor's consideration in his diagnosis of the plaintiff or in his opinion as to the extent of the injury.

■ · The third point relied upon by Mrs. Lowrey is that counsel for the plaintiff, in his argument to the jury, discussed "reaction time," and that this was a false and confusing issue not supported by the evidence.

The entire arguments are not a part of the record, and the following is all that appears:

"Mr. Stiff:—(Arguing before the jury) There is a reaction time before you see it is necessary to put on the brakes.

"Mr. Malone:—If the Court please, we object to that and ask the Court to instruct the jury not to consider it.

"The Court:—They can call upon their common experience that there is a reaction time; everybody knows that."

The contention in this regard is closely related to Mrs. Lowrey's last point as to contributory negligence. This is because counsel for Mrs. Lowrey argues that Mr. Canter failed to exercise a proper lookout until an instant before the accident. Mr. Canter had testified that he did not see Mrs. Lowrey until he put on his brakes, and counsel urges that he therefore did not see her until twenty-one feet before the collision, although he should have, because the two eastbound lanes of the street were clear of traffic. Counsel maintains that his case is strengthened if no reaction time is considered prior to the twenty-one feet itself as showing inattention on the part of Mr. Canter. Counsel, of course, relies upon the rule as stated in Ortega v. Koury, 1951, 55 N.M. 142, 227 P.2d 941, as to the duty of the operator of a vehicle to see and observe that which he should see. However, be this as it may, we do not believe that the argument was prejudicial. We have specifically held that it is a matter of common knowledge that there is a reaction period between the time one becomes aware of danger and the actual operation of applying the brakes. McMinn v. Thompson, 1956, 61 N.M. 387, 301 P.2d 326. The trial court's ruling was substantially in accord with such holding.

■ The final contention is that Mr. Canter was contributorily negligent as a matter of law and that the court should have sustained the defendant's motions for a directed verdict.

In this regard, we have recently had occasion to consider this matter and the rule is well settled in New Mexico that the issue of contributory negligence should be determined as a matter of law only when reasonable minds cannot differ on the question and readily reach the conclusion that the plaintiff was contributorily negligent and that his negligence proximately contributed with that of the defendant in causing the injury. See Sandoval v. Brown, 1959, 66 N.M. 235, 346 P.2d 551; and Button v. Metz, 1960, 66 N.M. 485, 349 P.2d 1047.

It should be remembered that the plaintiff Canter was operating an automobile in the location where he had a right to be, and that his car was struck by that of Mrs. Lowrey, she being admittedly negligent. An automobile is not like an individual, who may instantly step aside in order to get out of the way of something approaching. We do not believe, under the circumstances of this case, that Canter's failure to observe Mrs. Lowrey's approach in time to prevent the accident, if he could have done so, was negligence as a matter of law. Even though he may not have been as observant as he might, still the minds of reasonable men could certainly differ as to his actual negligence.

The court fully instructed the jury as to the duty of the plaintiff in accordance with Ortega v. Koury, supra, and with respect to his contributory negligence, if any. Also, a special interrogatory, in which the jury was required to find if plaintiff failed to keep a proper lookout, was answered in the negative. Unless we are to assume that the jury did not consist of reasonable men, an assumption in which we will not indulge, certainly there were twelve, or at least ten, individuals who did not think the plaintiff was negligent. The trial judge obviously thought likewise in denying the motions and we do not disagree.

From what has been said the judgment will be affirmed.

It is so ordered.

COMPTON, C. J., and CHAVEZ, J., concur.

MOISE and NOBLE, JJ., not participating.